UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| MARVIN THOMAS | ) |
| Plaintiff, | ) |
| VS. | ) Civil Action No. SA-06-CA-119-XR |
| CITY OF SELMA, *et al*. | ) |
| Defendants. | ) |

**ORDER**

Plaintiff brings this suit alleging that Defendants violated 42 U.S.C. § 1983 by depriving him of his substantive and procedural due process rights. Specifically, he avers that "Defendants deprived him of his good name and reputation as well as his personal property without due process of law."[1] He also alleges that he was "subjected to excessive force and cruel and unusual treatment by Defendants by being unlawfully detained, searched, arrested, handcuffed and incarcerated."[2] Furthermore, Plaintiff contends that the arresting officers failed to provide him *Miranda* warnings and that he was subjected to malicious prosecution. Finally, he argues that his First Amendment right to peaceably assemble at a bank parking lot was violated.

The Court dismissed Plaintiff's claims against the individual officers, finding that Plaintiff had failed to successfully allege that those Defendants had violated a clearly established

---

[1] Docket No. 19 at ¶ 24.

[2] *Id*. at ¶ 25.

constitutional or statutory right.[3] The Court's order did not consider, however, Plaintiff's claims against the City of Selma and the City of Schertz, which in addition to the aforementioned, included claims arising from the cities' alleged "policy and/or custom, or lack thereof," of failing "to properly train and or supervise Defendants Kunz, Acuna, and Sorensen."[4]

As the only remaining Defendants, the Cities of Selma and Schertz filed a motion for summary judgment. Plaintiff responded and later filed a separate advisory with the Court. Defendants filed a motion to strike the advisory on the grounds that it was untimely filed and irrelevant. The Court disagrees, and Defendants' motion to strike (Docket No. 57) is DENIED. As for the dispositive motion, having considered the parties' filings and the applicable law, the Court GRANTS Defendants' motion for summary judgment (Docket No. 49).

**Analysis**

Summary Judgment Standard

The Federal Rules provide that summary judgment "shall be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."[5] The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of

---

[3] *See* Docket No. 23.

[4] Docket No. 19 at ¶ 21.

[5] FED. R. CIV. P. 56(c).

a genuine issue of material fact."[6] Once a proper motion has been made, the nonmoving party may not rest upon mere allegations or denials in the pleadings, but must present evidence setting forth "specific facts showing a genuine issue for trial."[7]

Probable Cause to Arrest - The Facts

Defendants allege that this Court's holding in its Order dismissing the claims against the individual officers amounted to a finding that Plaintiff did not sustain a constitutional violation. Defendants further assert that because the officers' actions did not violate the Constitution, there can be no grounds for the survival of Plaintiff's remaining § 1983 claims against the cities.

In response, Plaintiff contends that the evidence shows that Defendants did not have probable cause to arrest him and that their actions related to the arrest were constitutionally violative.

On February 9, 2004, Plaintiff was arrested for impersonating a peace officer and on two counts of unlawfully carrying weapons (a handgun and a baton).[8] On the night in question, police officers with the Schertz Police Department received a suspicious vehicle call at approximately 1:37 a.m.[9] Responding to the call, they found Plaintiff in the driver's seat of a white Ford Crown Victoria with red, blue, and amber strobe lights on top, but with no external markings on the car.[10] The vehicle was parked in an empty bank parking lot, where it had been stationed for the past forty-five

---

[6] Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

[7] FED. R. CIV. P. 56(e)(2).

[8] Docket No. 54, Exhibit B, Incident Report (Officer Kunz).

[9] *Id.*

[10] *Id.* and Docket No. 49, Exhibit B at 40-1.

minutes to an hour.[11]

Officer Acuna approached the vehicle and initiated communications with Plaintiff, who was wearing a jacket with City of Castroville Police insignia on the sleeve.[12] According to Officer Acuna, Plaintiff identified himself as a Castroville police officer.[13] When asked for his identification, Plaintiff allegedly provided Officer Acuna with a "black police identification holder with a silver and blue Castroville Police badge with the badge number 308 and his named printed on it."[14] When asked for his police credentials, Plaintiff responded "I don't have it with me; I left it at home."[15]

Shortly thereafter, Officer Acuna observed Plaintiff throw what appeared to be an empty brown holster onto the front passenger seat.[16] Upon further investigation, Officer Acuna discovered a gun in the center console.[17] As would soon be discovered, the weapon was loaded with a live round in the chamber.[18] When Officer Acuna removed the handgun, he observed that it "was warm to the touch, as if the weapon had been worn by [Plaintiff]."[19]

Meanwhile, the Castroville Police Department was contacted, and a representative of that

---

[11] Docket No. 54, Exhibit B, Incident Report and Docket No. 49, Exhibit B at 46.

[12] Docket No. 49, Exhibit B at 55.

[13] Docket No. 54, Exhibit B, Incident Report (Officer Acuna).

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Id.*

Department informed the officers on the scene that despite his allegations to the contrary, Plaintiff was no longer employed as an officer by Castroville.[20]

Some of the officers were also suspicious of Plaintiff because of a "be on the lookout" (BOLO) report describing an individual who was impersonating a police officer, stopping women in his police lookalike car, arresting and hauling them away, and finally, raping them.[21]

Plaintiff's account of the night of the arrest is considerably different. In his deposition, he describes how he was innocently talking on his cell phone when Officer Acuna approached and started abusively questioning him.[22] Seeing Plaintiff's jacket with the Castroville Police Department patches, as well as the lights on top of Plaintiff's car, Officer Acuna, Plaintiff alleges, immediately started accusing him of being a serial rapist.[23] Then, without asking permission, Officer Acuna purportedly reached in through the open front passenger window and snatched up Plaintiff's credential case, which was sitting on the front seat and contained Plaintiff's Castroville badge.[24] Plaintiff admitted he had no credentials on him,[25] but allegedly told Officer Acuna he had just been sworn in by the Bexar County Constable's office, and that if Officer Acuna would call them, they would confirm his status as a credentialed peace officer.[26] Furthermore, Plaintiff states that his Bexar

---

[20] *Id.*

[21] Docket No. 54, Exhibit C at 24-5 and Exhibit I.

[22] Docket No. 49, Exhibit B at 54-5, 61, 65-6.

[23] *Id.* at 65-6.

[24] *Id.* at 62-3.

[25] *Id.* at 65.

[26] *Id.* at 69.

County badge was in the glove box of the car, but the officers failed to look there in accordance with departmental procedures.[27]

As for the gun, Plaintiff acknowledges he had one in his car, but disputes that it was on his person. Rather, he contends that it was warm to the touch because his car was on and the gun was up against the warm transmission.[28]

Shortly after Officer Acuna commenced his questioning, Officer Kunz arrived and began talking with Plaintiff.[29] Plaintiff states that he and Officer Kunz had met three weeks before, and he thought that Officer Kunz both recognized him and knew him to be a police officer.[30] While it is unclear who made the final decision to arrest Plaintiff, it is alleged that Officer Kunz, apparently without Mirandizing him, placed Plaintiff in handcuffs, seated him in the backseat of a patrol car, and drove him to the station for booking.[31]

Before being arrested, however, Plaintiff emphasizes that he told Officer Acuna to contact the Bexar County Constable's office to confirm his status as a credentialed officer, but Officer Acuna failed to do so.[32] Officer Acuna denies that Plaintiff ever made this request, but because this is a summary judgment motion, the Court resolves the factual dispute in Plaintiff's favor. As it turned

---

[27] Docket No. 54 at 3.

[28] Docket No. 49, Exhibit B at 88.

[29] Throughout this time, a number of other officers were standing around Plaintiff's car, although their contribution to the investigation is largely unclear.

[30] Docket No. 49, Exhibit B at 75-7, 79-80.

[31] Plaintiff was later released on bond, and the charges against him subsequently dropped.

[32] Docket No. 49, Exhibit B at 69.

out, Plaintiff had indeed been sworn in as a peace officer by the Bexar County Constable's office prior to the night of the arrest.[33]

Probable Cause to Arrest - The Law

The primary inquiry for the Court is to consider whether the evidence, when viewed "in the light most favorable to the non-moving party,"[34] provided the Schertz and Selma police officers with probable cause to arrest Plaintiff. Probable cause exists "when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense."[35]

Probable Cause to Arrest - The Law Applied to the Facts

Thus, the Court must determine whether a reasonable person, based on the totality of the undisputed facts coupled with Plaintiff's reasonable version of the disputed facts,[36] would conclude that Plaintiff had committed or was committing the offense of impersonating an officer.[37]

As a recap, Plaintiff was parked in an empty bank parking lot for approximately an hour between roughly 12:45 - 1:45 a.m., sitting in a car that looked like a police vehicle, but

---

[33] *See* Docket No. 56, Exhibit A.

[34] Williams v. Time Warner Operation, Inc., 98 F.3d 179, 181 (5th Cir. 1996).

[35] Glenn v. City of Tyler, 242 F.3d 307, 313 (5th Cir. 2001).

[36] "A court is to make all reasonable inferences *in favor* of the nonmovant in ruling on a summary judgment motion." Cooper Tire & Rubber Co. v. Farese, 423 F.3d 446, 456 (5th Cir. 2005) (emphasis original).

[37] While Plaintiff was also arrested on two weapons possession charges, the issue of probable cause on those is dependent on the Court's determination concerning the charge of impersonating an officer. It is undisputed that Plaintiff carried both a loaded firearm and a baton in his car without any license showing he was permitted to carry such weapons. Thus, a finding of probable cause on the impersonating an officer offense leads to probable cause for the two weapons related charges.

conspicuously missing any external markings indicating to which police department it belonged.

Plaintiff admits that the jacket he was wearing was the same one he wore while on duty with the Castroville Police Department[38] and that he still had a duplicate of his Castroville police badge with him, even though he was no longer associated with the Castroville police.[39] Nevertheless, he admits he had no peace officer credentials on him or in his car,[40] and when Officer Acuna asked him, "well, who were you with?," Plaintiff pointed to the patch on his shoulder and said "Castroville."[41] When Officer Acuna checked with the Castroville Police Department, however, he was informed that Plaintiff was no longer an officer with them.[42] At this point, Officer Acuna stated that he felt probable cause existed to believe Plaintiff was impersonating a peace officer.[43] The Court agrees.

Plaintiff states that a thorough investigation of his vehicle would have turned up his Bexar County badge, which he used with his then current assignment. But while he may have been able to produce a Bexar County badge, Plaintiff could not produce any credentials. This discrepancy drew the suspicion of Officer Acuna because in his "law enforcement career, anybody can obtain a badge."[44]

Indeed, Plaintiff was carrying a duplicate of his expired Castroville badge on the night of the

---

[38] Docket No. 49, Exhibit B at 55.

[39] *Id*. at 59-60.

[40] *Id*. at 65.

[41] *Id*.

[42] Docket No. 54, Exhibit B at 43.

[43] *Id*.

[44] *Id*. at 26.

arrest,[45] and as of his November 2007 deposition date, still possessed a former Bexar County badge from a term of service that concluded August 3, 2004.[46] As Plaintiff noted, "when you're a reserve like me, you have to buy your own gear, you have to buy your own badge . . . I purchased this badge and it belongs to me, so when I leave the constable's office, of course, I don't have to surrender it, it's mine."[47]

As for Plaintiff's contention that he told Officer Acuna to call the Bexar County Constable's office, even assuming this is true, it does not alter the probable cause finding. Just because someone makes a demand of a police officer during an investigation does not require the officer to comply. In the heat of the moment, words can be misunderstood, and decisions have to be made based on the facts as the officers can best assess them. Officer Kunz, the arresting officer, testified that he thought Plaintiff said he would be hired by another department later that week, not that he had already been hired.[48] As for why he didn't try to confirm this prospective future employment, Officer Kuntz stated he believed Plaintiff had already provided untruthful information about being presently affiliated with the Castroville Police Department, and thus, he did not feel Plaintiff was telling the truth about his alleged new employment.[49]

While in hindsight the officers could have checked with the Bexar County Constable's office, given the facts before them at the time, the Court cannot find that their failure to do so eliminates

---

[45] Docket No. 49, Exhibit B at 58-9.

[46] *Id*. at 57, 29.

[47] *Id*. at 57.

[48] Docket No. 54, Exhibit D at 28.

[49] *Id*.

the basis for their probable cause determination.

Plaintiff makes much out of the admitted discrepancies between himself and the rape suspect described in the BOLO report.[50] It is true that Officer Sorensen, one of the officers at the scene of the arrest, did consider the BOLO report in his assessment of the situation.[51] Nevertheless, Plaintiff was charged not with rape, but with impersonating an officer and illegal possession of firearms. Indeed, in his probable cause affidavit, Officer Kunz, the arresting officer, never mentions the BOLO report in stating the reasons why he and his fellow officers had probable cause to make the arrest.[52]

As for Plaintiff's other arguments pertaining to the arrest, it is true that the police officers in question did not activate the video recording cameras in their police cars pursuant to standard operating procedures, but this failure to do so has no bearing on the probable cause analysis. Likewise, while Officer Kunz acknowledged that it was probably a mistake not to include in his arrest report Plaintiff's alleged comments about the Bexar County Constable office's intent to hire him the next week, Officer Kuntz testified that based on the evidence available to him at the time, he simply did not believe the comment was truthful or noteworthy.[53] While he was wrong in his assessment, his failure to include the statement did not deprive him of probable cause to make the arrest.

---

[50] For example, Plaintiff and the BOLO suspect were of different races, as well as substantially different heights and weights.

[51] Docket No. 54, Exhibit C at 24-5.

[52] Docket No. 54, Exhibit D, Probable Cause Affidavit.

[53] Docket No. 54, Exhibit D at 28, 36-7.

Remaining Two Claims against Cities

Because Plaintiff's claims pertaining to the individual officers were dismissed by this Court in its October 2006 Order,[54] only the claims against the City of Selma and the City of Schertz remain. A review of the multifarious causes of action pled by Plaintiff reveals that all but two of these claims are immediately extinguished by the Court's finding that the police officers had probable cause to arrest Plaintiff.

Of the two remaining claims, one is for violation of Plaintiff's *Miranda* rights. What this Court noted previously in its motion to dismiss order, however, remains true today:

> There are no facts pled that any officers interrogated Plaintiff after his arrest or that any incriminating statements were procured without Thomas's consent. The fact that all charges filed against Thomas were later dismissed indicates that any incriminating statements obtained from Thomas were not used against him in any criminal trial. Although a failure to provide *Miranda* warnings may support a suppression motion, that sole alleged violation in this context does not provide the basis for §1983 relief. *See Chavez v. Martinez*, 538 U.S. 760, 772 (2003).[55]

Finally, Plaintiff contends that because of the "policy and/or custom, or lack thereof, Defendant Cities failed to properly train and/or supervise Defendants Kunz, Acuna, and Sorensen."[56]

Even if Plaintiff is correct in his contention that the Defendant Cities failed to properly train and/or supervise their officers, the Court's finding on the issue of probable cause is dispositive. As the Supreme Court stated in *City of Los Angeles v. Heller*, "if a

---

[54] Docket No. 23.

[55] *Id*. at 6.

[56] Docket No. 19 at ¶ 21.

person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* [his actions] is quite beside the point."[57] The Fifth Circuit also adopted this reasoning in *Saenz v. Heldenfels Brothers, Inc.*[58] As a result, because Plaintiff is unable to establish a constitutional injury caused by the individual officers, his claims against the Cities must also fail.

## Conclusion

For the reasons stated above, while Defendants' motion to strike (Docket No. 57) is DENIED, Defendants' motion for summary judgment (Docket No. 49) is GRANTED. The clerk is instructed to enter Judgment for Defendants. Costs are to be born by Plaintiff. Defendants have fourteen (14) days from entry of Judgment to submit their bill of costs.

It is so ORDERED.

SIGNED this 30th day of January, 2008.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

---

[57] 475 US 796, 799 (1986) (per curium) (emphasis original).

[58] 183 F.3d 389, 392-3 (5th Cir. 1999).